IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ELTON R. RUSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:19-cv-483-RAH-SMD |
| ) | (WO) |
| DOTHAN CITY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elton R. Russ ("Russ" or "Plaintiff") brings this employment action against Defendant Dothan City School Board ("the Board" or "Defendant"). Russ, a school administrator formerly employed by the Board as an assistant principal, asserts various claims for discrimination arising out of the Board's decision to nonrenew his employment. The Board has now moved for summary judgment as to each of Russ's claims, and the matter has been fully briefed. For the reasons that follow, the Board's motion will be granted.

## I. JURISDICTION

The Court exercises subject matter jurisdiction over the Plaintiff's claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

1

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 47 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). This burden can be met by either presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-323.

If the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and show that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). To this end, the court must consider that a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B). At all times, the court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean–Baptiste v. Gutierrez,* 627 F.3d 816, 820 (11th Cir. 2010).

## III. FACTUAL BACKGROUND

The evidence viewed in the light most favorable to Russ reveals the following: Russ, who is African American, has had a long career as a school administrator, and after working for various school districts from 1997 to 2014, became employed by the Board as an assistant principal at Honeysuckle Middle School in November 2014. (Doc. 50-1, pp. 4-8.) He remained in this position until his nonrenewal in May 2018. (*Id*., pp. 8-9.)

The relevant period of Russ's uninterrupted employment with the Board lasted approximately three years and seven months, and at all times therein, he was a probationary (nontenured) employee. (*Id*., p. 9.) Because Russ began working for the Board during the 2014-2015 school year, and because Russ was subsequently nonrenewed before he completed the 2017-2018 school year, Russ did not successfully obtain tenure under the Students First Act, Ala. Code § 16-24C-1.[1] And

---

[1] Alabama's Students First Act provides that employees must work within the same school system full-time for three complete, consecutive years to earn tenure "unless the governing board approves and issues written notice of termination to the teacher on or before the last day of the teacher's third consecutive, complete school year of employment." Ala. Code § 16-24C-4(1).

even Russ himself acknowledges that, under Alabama's governing teacher tenure statute, he was never tenured in his post with the Board. (*Id.*, p. 28.)

Russ's time at Honeysuckle Middle was punctuated by controversy, chiefly due to sexual harassment allegations made by several women in 2017 against both Russ and Honeysuckle Middle's principal, Jeffrey Torrence ("Torrence"). (Doc. 50-1, p. 18.) In response to these allegations and a multitude of other issues at Honeysuckle Middle, the Board hired Dr. Larry DiChiara to investigate – a move that Russ attributes to racial animus.[2] (Doc. 50-1, pp. 20-21; Doc. 50-5, p. 3.)

The Board asserts that in 2018 it underwent a period of financial hardship. (Doc. 50-2, p. 9.) Numerous schools within the school system were facing declining enrollment, and because of budgetary adjustments, the Board was downscaling the number of staff in those schools.[3] (*See* Ala. Admin. Code § 290-2-1-.02; Doc. 50-2, pp. 24-25.) Newly minted superintendent, Dr. Phyllis Edwards ("Edwards"), was

---

[2] To this end, Russ points to the Board's decision not to hire an outside consultant to investigate sexual harassment allegations against former principal Tim Wilder ("Wilder"), a white male. (Doc. 50-1, p. 20.) But as the Board explains, the conclusions contained in Dr. DiChiara's report ("DiChiara Report") in no way altered Russ's employment, and it largely addressed matters other than the allegations against Russ. On the other hand, the Board ultimately discharged Wilder shortly after the sexual harassment allegations against him were reported. (Doc. 50-2, p. 30; Doc. 50-5, pp. 2-3.)

[3] The Alabama State Department of Education oversees public school funding for systems such as the Dothan City School System. Funds are allotted based on the calculations set forth in Ala. Admin. Code § 290-2-1-.01 and funding projections for subsequent years are also made pursuant to Ala. Admin. Code § 290-2-1-.02. Student enrollment dictates the number of "teaching units" available for each school.

tasked with recommending[4] cuts to staff, and as she noted at Honeysuckle Middle, the cuts needed to be "pretty significant." (Doc. 50-2, p. 17.)

According to Dr. Edwards, she began making cuts by looking at employees who did not have tenure. (Doc. 50-2, p. 17.) Nonrenewing probationary employees, she noted, did not implicate the same due process concerns as would tenured employees. (*Id.*, p. 18.)

Russ was among those probationary employees Dr. Edwards recommended for nonrenewal. (Doc. 50-2, pp. 28-29.) Dr. Edwards maintains that neither Russ's race nor the DiChiara Report influenced her recommendation, (*id.*, p. 20), and of the twenty-seven individuals recommended for nonrenewal in May 2018, twenty-one were white and six were African American, (Doc. 50-4, p. 3).

Before approving Russ's nonrenewal, which was first presented to the Board on May 17, 2018, Board member Brenda Guilford ("Guilford") asked to delay voting for a few days, observing that nothing negative appeared in Russ's personnel file. (Doc. 50-5, pp. 4-5; Doc. 50-6, pp. 3, 6.) Despite the delay, Russ's nonrenewal ultimately was approved on May 21, 2018, with Board members Guilford and Franklin Jones ("Jones") dissenting. (Doc. 50-6, pp. 48-49.) As Russ notes, Guilford and Franklin were the only members who identified as African American; the

---

[4] Procedurally, Dr. Edwards as the superintendent made recommendations for nonrenewals, and the Board voted to either approve or reject the recommendations. (Doc. 50-2, p. 18.)

remaining Board members were white. (Doc. 50-1, p. 3.) The Board hand-delivered a letter to Russ notifying him of his nonrenewal on May 22, 2018, before the last day of school. (*See* Doc. 34, p. 5; Doc. 50-1, p. 12; Doc. 50-7.)

Russ was replaced as assistant principal at Honeysuckle Middle by Marsielena Williams ("Williams"), an African American female, who was also a probationary employee, although not as close to making tenure as Russ. (Doc. 50-3, pp. 2-3.) Williams did not obtain tenure with the Board, and when Honeysuckle Middle was closed the following year, Williams left the system. (*Id.*)

After his departure, Russ applied for and was offered a job as an assistant principal in the Jackson County, Florida school system. (Doc. 50-1, pp. 24-25.) That offer was later rescinded. According to Russ, former Dothan City School Board member Ben Armstrong ("Armstrong") told the Jackson County superintendent that the Board had terminated Russ because of the sexual harassment allegations made against him. (*Id.*) Nonetheless, Russ conceded in his deposition that Armstrong was not a member of the Board at the time he made these alleged statements. (*Id.*, p. 26.)

Russ initiated this action on July 8, 2019. (Doc. 1.) His four-count complaint, as amended, alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") (Count I), 42 U.S.C. § 1983 ("Section 1983") (Count II), and Alabama state law (Counts III and IV) for wrongful termination and defamation. (Doc. 34.)

## IV.   ANALYSIS

    a.   <u>Race Discrimination: Title VII</u>

Russ first contends the Board nonrenewed him because of his race in violation of Title VII (Count I). In its summary judgment motion, the Board argues that Russ cannot move forward with such a claim under either the *McDonnell Douglas* or convincing mosaic analysis.  In his response, Russ does not defend his claim under *McDonnell Douglas*; instead, he focuses solely on the convincing mosaic analysis. As such, the Court similarly will direct its focus under the convincing mosaic analysis and will deem the analysis under *McDonnell Douglas* as conceded and certainly not sufficiently developed. *Ratcliff v. Heavy Machines, Inc.*, Case No. CIV.A. 06-0861-WS-M, 2007 WL 1791646, at *3 (S.D. Ala. June 20, 2007) (the Court "may ignore arguments not adequately developed by [the] nonmovant").

A plaintiff can still survive summary judgment if he can present a "convincing mosaic" of circumstantial evidence that would permit a jury finding of intentional discrimination. *Lewis v. City of Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019) (*en banc*). A convicing mosaic will ordinarily include "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the

employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)).

Russ points to several circumstances attending his nonrenewal which, by his calculations, should allow a jury to infer intentional discrimination under the convincing mosaic analysis. Namely, he offers a spreadsheet summary of the Board's funding amounts, (Doc. 56-4), points to the "substantial absence of performance evaluations" showing he was a poor employee, questions the discrepancies between the reasons given for Russ's nonrenewal as documented on the Board's EEOC Charge response and response to the DOL employer questionnaire, challenges the Board's capacity to hire a replacement for his position, and provides several newspaper headlines (albeit without argument) referencing several of the difficulties facing Honeysuckle Middle, (*see* Doc. 56-6).

The construction of Russ's mosaic leaves much to be desired. Turning first to the spreadsheets detailing the Alabama Department of Education's funding allocations to the Dothan City School System, (*see* Doc. 56-4), there is simply no inference of discrimination that can be drawn. Russ presents the spreadsheets to support his position that the financial constraints asserted by the Board were contrived. Although the numbers reflected suggest that the system's allocated funds increased incrementally on an annual basis from the 2017 through 2020 fiscal years, these spreadsheets document only a snapshot of the system's overall funding and do

not shed any light on corresponding expenses or issues that were being addressed by these funds, particularly at Honeysuckle Middle. Dr. Edwards's testimony is the only record evidence that gives any context to these numbers. As she put it, the system had many issues to address, including "enrollment, what was going on with the buildings, . . . the code of conduct, [and] discipline." (Doc. 50-2, p. 9.) Additionally, she testified that the system's financial troubles stemmed, at least in part, from the system's failure to maintain its state mandated financial reserves. (*Id.*, pp. 9-10.) Given this, and the added fact that Honeysuckle Middle closed at the end of the 2019 school year due to shrinking enrollment, it is difficult to read the funding reports as a direct challenge to the Board's overall financial condition.

There is also very little to glean from the "substantial absence of performance evaluations" in Russ's personnel file. Indeed, the absence of performance evaluations says nothing of whether Russ's race motivated his nonrenewal, particularly with the consideration that the Court does not have any information whatsoever regarding the Board's use of performance evaluations or whether they were regularly given for employees from outside of Russ's protected class.

Where Russ vaguely challenges the discrepancies between the Board's stated reasons for his nonrenewal, including Russ's "unremarkable" performance in its EEOC charge response (Doc. 1-4, pp. 28-30), a "lack of work" for Russ in its DOL questionnaire, (Doc. 56-2, p. 3), and the financial constraints it has described in its

9

motion, his claim continues to be unavailing. In the Eleventh Circuit, an erroneous EEOC statement can be circumstantial evidence of discrimination but "alone cannot create a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination." *Dukes v. Shelby Cty. Bd. of Educ.*, 762 F. App'x 1007, 1014–15 (11th Cir. 2019); *but see Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237 (5th Cir. 2015) (highlighting that other circuits may take different approaches).

More, where an employer's reasons are not inconsistent with one another, as in the instant case, no compelling inference of discrimination can be drawn. *See, e.g.*, *Tidwell v. Carter Prod.*, 135 F.3d 1422, 1427 (11th Cir. 1998) (recognizing the existence of cumulative nondiscriminatory reasons for nonrenewal does not automatically demonstrate pretext); *Hutchinson v. Phenix City Board of Educ.*, Case No. 3:03-cv-700-WHA, 2007 WL3342568, at *7 (M.D. Ala. Nov. 9, 2007) (same). The Board never walks back on its comments that Russ was an "unremarkable" employee, and the closure of Honeysuckle Middle one year following Russ's nonrenewal confirms Dr. Edwards's testimony that the Board's employment base was shrinking and that a lack of work existed for Russ. These facts together undermine suggestions that its statements to the EEOC or the DOL were erroneous, or otherwise inconsistent.

Although somewhat troubling that the Board had the financial capacity to hire a replacement[5] for Russ's position at Honeysuckle Middle, the Board's stated logic quells the notion that discriminatory intent motivated its nonrenewal of Russ. As explained by the Board, Dr. Edwards saw the writing on the wall. She knew that enrollment at Honeysuckle Middle, in particular, was declining, and she knew that personnel cuts would have to be made in both the short-term and in the long-term. She made a recommendation to nonrenew Russ before he attained tenure as a protective measure for the Board in years to follow, and she was entitled to exercise this business judgment. *Cf. Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1265-66 (11th Cir. 2010) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (the court does not "sit as a super-personnel department that reexamines an entity's business decisions").

The newspaper headlines, (Doc. 56-6), present a separate admissibility issue. Generally, inadmissible hearsay statements should not be considered on summary judgment if they cannot be reduced to an admissible form for trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999); *see also Casey v. Clayton Cty., Ga.*, Case No. CIV.A.1:04CV00871-RW, 2006 WL 870379, at *9 n.5 (N.D. Ga. Mar. 30,

---

[5] Russ's replacement was African American, like Russ.

11

2006) (citing *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996)). Here, Russ has sloppily attached four newspaper headlines which detail some of the various issues facing Honeysuckle Middle without any meaningful explanation. Because no discussion is given on the possible admissibility of these newspaper headlines, including their relevance to Russ's race discrimination claims, the Court declines to weigh them as part of Russ's mosaic. And in any case, none of the headlines implicate the Board for discriminatory conduct, none discuss Russ or his nonrenewal, and consequently, none create a genuine issue of fact to be resolved at trial.

    In short, the evidence presented by Russ does not rise to the level where courts have allowed similar claims to proceed under a convincing mosaic theory. *See, e.g., Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1329 (11th Cir. 2011) (record indicated that white and Black employees were treated differently and that employer was tracking race in disciplinary decisions); *Holland v. Gee*, 677 F.3d 1047, 1062 (11th Cir. 2012) (inference of discrimination on basis of pregnancy could be drawn where evidence showed terminated plaintiff's pregnancy was a topic of discussion among her supervisors, the employer's credibility was damaged at the trial, and female plaintiff was treated differently from male employees); *Scott v. Soc. Involvement Missions, Inc.*, Case No. 1:17-CV-4963-AT-CCB, 2020 WL 7685222, at *8 (N.D. Ga. Jan. 21, 2020), *report and recommendation adopted*, Case No. CV

1:17-4963-AT-CCB, 2020 WL 7237702 (N.D. Ga. Dec. 9, 2020); *Smith v. Fla. Gulf Coast Univ. Bd. of Trustees*, Case No. 2:14-CV-50-FTM-29MRM, 2017 WL 319589, at *12 (M.D. Fla. Jan. 23, 2017) (mosaic complete where employer clearly treated white employees more favorably than Black plaintiff). Accordingly, the motion for summary judgment on Count I is due to be granted.

    b.    <u>Procedural Due Process: § 1983</u>

In Count II, Russ alleges a violation of his procedural due process rights as granted by the Fourteenth Amendment and made actionable via § 1983. More precisely, Russ centers this constitutional claim on the Students First Act, codified at Ala. Code § 16-24C-1, *et seq.*, which in his view, entitled him to a property interest in his continued employment with the Board. The Board's deprivation of that interest without due process, he continues, constituted a violation of his constitutional rights.

In its summary judgment motion, the Board argues that it is entitled to summary judgment because, as a nontenured employee, Russ held no property interest in his position and therefore was not afforded any due process. Russ does not respond to this argument. In fact, in his response brief, Russ altogether fails to address this claim, and by doing so, he has effectively abandoned it. *See Mosley v. Alabama Unified Judicial Sys., Admin. Office of Courts*, 562 F. App'x 862, 866 (11th Cir. 2014); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) (finding a nonmovant's failure to discuss an issue that a movant raises in

a summary judgment motion may be construed as an abandonment of the claim). Accordingly, the Board is entitled to summary judgment on the procedural due process claim.

    c.    <u>State Law Claims</u>

Russ's final two claims arise under Alabama state law. In Count III, Russ advances a state-law claim for wrongful termination, and in Count IV, he alleges that former Board member Armstrong made defamatory statements about him to the Jackson County School Superintendent. The Board moved for summary judgment on both of these claims as well. And as with his due process claim, Russ failed in his response to challenge the Board's claimed entitlement to summary judgment. As such, Russ has abandoned both of his state law claims as well.

## V. CONCLUSION

For the foregoing reasons, it be and is hereby

ORDERED that the Motion for Summary Judgment (Doc. 50) as to all claims raised in the Complaint is due to be and is hereby GRANTED in favor of the Board. This matter in its entirety is hereby dismissed. A separate judgment will issue.

DONE, on this the 11th day of May, 2021.

                                                              /s/ R. Austin Huffaker, Jr.
                                                   R. AUSTIN HUFFAKER, JR.
                                                   UNITED STATES DISTRICT JUDGE